## AFFIDAVIT OF NANCY L. MCCORMICK

I, Nancy L. McCormick, being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed as such since February 1990. My responsibilities include the investigation of federal offenses including, but not limited to, violations involving wire fraud, mail fraud, mortgage fraud, insurance fraud and other financial crimes. I am currently assigned to a White Collar Crime Squad in the Boston Office of the FBI. I have extensive experience in this earea, particularly in the area of mortgage fraud. I have received substantial training in financial, corporate, and mortgage fraud investigations. I am actively participate in regional and on-line training seminars, and I was a member of the former Boston area mortgage-fraud working group.

2. I know that Title 18 of the United States Code, Section 1343, makes it a crime for anyone, having devised or intending to devise a scheme or artifice to defraud and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, to cause writings, signs, signals, pictures, or sounds to be transmitted by means of wire communications in interstate commerce for the purpose of executing such scheme and artifice.

3. I make this affidavit in support of a complaint charging Joan Ruggiero ("RUGGIERO"), doing business as Ruggiero/Eacmen Victorian Real Estate II, Inc. (Victorian Real Estate II), SSN: xx-xxx-0742, of Dorchester, Massachusetts, with wire fraud, in violation of 18 U.S.C. §§ 1343 & 2, in connection with her role in the July 2008 sale of two condominiums at 64 Wayland Street, Units 1 and 2, Dorchester, Massachusetts. RUGGIERO, working alone and in concert with others, caused materially false and fraudulent representations to be made to Countrywide Bank FSB (Countrywide Bank), a federally insured financial institution, for the

purpose of obtaining mortgage loans for the buyers of those properties. RUGGIERO submitted or caused to be submitted fraudulent loan applications, Purchase and Sales Agreements, HUD-1 Settlement Statements, and other documents in support of the loan-application packages.

4. I base this affidavit on my own personal knowledge as learned through my investigation of the crime described herein and on my conversations with others, including other agents involved in this investigation. This affidavit is submitted for the limited purpose of establishing probable cause that RUGGIERO committed wire fraud, and does not contain all facts known to the FBI and other law enforcement agencies concerning this investigation.

## SCHEME TO DEFRAUD

5. In 2008, RUGGIERO, alone and with others, purchased several multi-family properties in the names of trusts, converted the units to condominiums, and then sold the individual units at a profit to buyers whom she or others recruited and duped into believing that they were obtaining no-cost real estate "investments." RUGGIERO often failed to disclose to the buyers she and others recruited that she was also the seller of the units.

6. RUGGIERO submitted and caused to be submitted, in the buyers' names, loan applications to various mortgage lenders, which applications contained material misrepresentations concerning the buyers' incomes, assets, intentions to reside in the properties, and down payments, among other things. After the mortgages were approved and the sales were executed, RUGGIERO reaped substantial profits from the mortgage proceeds she fraudulently secured.

## 64 WAYLAND STREET, DORCHESTER, MA

7. RUGGIERO purchased the building located at 64 Wayland Street in May 2008 and had the building converted into two condominium units. RUGGIERO, however, purchased

the property not in her own name, but in the name of a trust known as the Alexandria Realty Trust. The trustee, A.K., is RUGGIERO's sister and a resident of Florida. RUGGIERO recruited A.K. to act as a nominal owner/trustee for these real estate transactions.

8. With her ownership interest in the property hidden, RUGGIERO acted as real estate broker and recruited buyers for each of the two units, identified as L.L. and J.W., respectively. RUGGIERO told each of the "buyers" that they would not have to provide any funds in connection with their purchases and that RUGGIERO would take care of mortgage payments using rental income from the units, which she would manage. L.L. and J.W. communicated with RUGGIERO and others working on behalf of RUGGIERO, who prepared their mortgage-loan applications. Both L.L. and J.W. provided truthful information regarding their employment, income, assets, and intentions to purchase the properties as investments. RUGGIERO then submitted or caused to be submitted false information to Countrywide Bank. In particular, RUGGIERO materially misrepresented the buyers' income, assets, and intentions to reside in the properties. RUGGIERO also created or caused to be created false documentation in support of the loan applications, including letters attesting to non-existent deposits to Victorian Real Estate II, phony leases and rental payments, and a false Verification of Employment.

9. RUGGIERO also prepared and submitted to Countrywide Bank fraudulent Purchase and Sale Agreements, which falsely represented that L.L. and J.W. each had made substantial deposits to Ruggiero/Victorian Real Estate II toward the purchases of their condominium units at 64 Wayland Street.

10. Additionally, RUGGIERO caused the closing attorney, N.L., to prepare and submit to Countrywide Bank HUD-1 Settlement Statements, which falsely represented that the

3

aforementioned deposits had been made and that the buyers made "Cash Due From Borrower" payments at closing. In fact, RUGGIERO paid the buyers' funds due at closing for each of the two condominium units. Specifically, RUGGIERO purchased or caused to be purchased official bank checks using funds drawn on Victorian Real Estate II's Bank of America account, which were subsequently provided to N.L. The official checks falsely indicated that they were purchased by L.L. and J.W., respectively.

11. On July 1, 2008, Bank of New York Mellon, on behalf of Countrywide Bank, made two separate wire transfers, in the amounts of $244,815.93 and $282,909.07, to the IOLTA account of N.L., which represented the loan proceeds for Units 1 and 2, respectively.

12. On the same date, N.L. made two checks payable to A.K. in the amounts of $195,933.69 and $36,146.57, representing the seller's proceeds for Units 1 and 2 respectively, and gave the checks to RUGGIERO. On July 2, 2008, after signing A.K.'s signature on the endorsement line of each check, RUGGIERO deposited the checks into her Victorian Real Estate II accounts ending 9882 and 8673 at Bank of America.

## CONCLUSION

13. Based upon the above, I believe that there is probable cause to believe that RUGGIERO violated 18 U.S.C. § 1343, that is, having devised or intending to devise a scheme or artifice to defraud and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, she caused writings, signs, signals, pictures, or sounds to be transmitted by means of wire communications in interstate commerce for the purpose of executing such scheme and artifice, to wit: wire transfers of loan proceeds advanced in connection with the putative purchases of Units 1 and 2, 64 Wayland Street, Dorchester, Massachusetts.

Nancy L. McCormick
Special Agent

Date: 8/1/2013

Subscribed and sworn to before me this 1 day of August 2013.

MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE