UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



2013 AUG 29 A 8: 42

| UNITED STATES OF AMERICA | CRIMINAL NO. 13cr 10252 |
| --- | --- |
| v. | VIOLATIONS: |
| JOAN RUGGIERO, | 18 U.S.C. § 371 (Conspiracy) |
| Defendant. | 18 U.S.C. § 981 & 28 U.S.C. § 2461(c) (Criminal Forfeiture) |

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1. Defendant JOAN RUGGIERO ("RUGGIERO") was an individual residing in Dorchester, Massachusetts.

2. RUGGIERO owned and operated Ruggiero/Eacmen Victorian Real Estate II, Inc. ("Victorian Real Estate"), a Massachusetts corporation with an address in Dorchester, Massachusetts.

3. "M.D.S.," who lived in Mansfield, Massachusetts, owned and operated Southeast Properties, LLC ("Southeast Properties"), a real estate development company originally located at 465 Ashmont Street, Dorchester, Massachusetts, and subsequently located at 121 East Berkeley Street, Boston, Massachusetts.

4. M.D.S. was also the owner and operator of M3 Realty Partners, LLC, ("M3 Realty") an apartment building management company located at 121 East Berkeley Street, Boston, Massachusetts.

### THE BUYERS

5. Individuals referred to herein as "L.L.", "J.W.", "A.W.", "M.C.", M.G.", "M.C.", "C.Y.", and "H.S." were persons who were recruited to serve as "buyers" of certain properties.

6. These buyers were individuals in whose name real property was purchased and in whose names financing from the mortgage lenders was fraudulently obtained. Each of the buyers made no down payment, paid no closing costs, had no personal capacity to make the mortgage loan payments, and had no intention to reside in the properties.

### THE MORTGAGE LENDERS

7. Countrywide Bank FSB ("Countrywide Bank") was a federally insured financial institution, as defined in Title 18, United States Code, Section 20, and a mortgage lender with an address at 99 Rosewood Drive, Danvers, Massachusetts.

8. National City Mortgage, a division of National City Bank ("National City Bank"), a federally insured financial institution, as defined in Title 18, United States Code, Section 20, was a mortgage lender with an address at 4100 West 150th Street, Cleveland, Ohio.

9. Greenpark Mortgage Corporation d/b/a GPMC ("Greenpark Mortgage") was a mortgage lender with an address at 140 Gould Street, Needham, Massachusetts.

10. Provident Funding Associates ("Provident Funding") was a mortgage lender with an address at 851 Traeger Avenue, San Bruno, California.

## COUNT ONE
## (Conspiracy – 18 U.S.C. § 371)

11. The allegations in Paragraphs 1 through 10 are re-alleged and incorporated herein by reference.

12. Beginning not later than in or about October 2007, and continuing in or about December 2008, in the District of Massachusetts and elsewhere, defendant

### JOAN RUGGIERO

knowingly and willfully did conspire with M.D.S., and others known and unknown to the United States Attorney, to commit offenses against the United States, to wit, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, to transmit and caused to be transmitted by means of wire communications in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of 18 U.S.C. § 1343 (wire fraud).

### PURPOSE OF THE CONSPIRACY

13. The purpose of the conspiracy was to obtain loan proceeds from mortgage lenders for personal profit.

### MANNER AND MEANS

14. It was part of the conspiracy that:

   a. RUGGIERO, M.D.S., and others acting in concert with them identified multiple-family buildings for sale and purchased them in the names of other individuals and entities, including relatives, friends, and others, for purposes of concealing their ownership interests in those buildings. RUGGIERO, M.D.S., and others acting in concert with them then

arranged for the buildings to be converted into condominiums so that RUGGIERO and others acting in concert with her could "flip" them, that is, sell individual units in the buildings that had been purchased for a profit.

b. RUGGIERO, M.D.S., and others acting in concert with them next recruited buyers to purchase the condominium units contained in those buildings. In recruiting buyers, at various times, RUGGIERO, M.D.S., and others acting in concert with them:

i. Arranged for buyers to obtain mortgage loans from mortgage lenders to finance the purchase of condominium units;

ii. Promised buyers that they did not have to make down payments or pay any funds in connection with the condominium-unit purchases;

iii. Promised buyers that the properties would be maintained on behalf of the buyers; and

iv. Promised buyers that tenants would be obtained on behalf of the buyers to rent the condominium units and mortgage payments would be paid on behalf of the buyers.

c. RUGGIERO, M.D.S., and others acting in concert with them caused mortgage loan applications and supporting documents to be prepared and submitted to mortgage lenders that contained various misrepresentations, including: (i) falsely inflated purchase prices for the condominiums; (ii) false representations regarding buyers' monthly income; (iii) false representations regarding buyers' employment; (iv) false representations

that buyers owned substantial assets; and (v) false representations that buyers intended to occupy the condominium units as their primary residences.

    d.    RUGGIERO, M.D.S., and others acting in concert with them caused false and fraudulent loan-closing documents to be prepared, including HUD-1 settlement statements that falsely represented that buyers had made down payments, falsely represented that buyers had paid other funds in connection with the condominium purchases, and that falsely represented how the proceeds of the mortgage loans were disbursed.

    e.    RUGGIERO and M.D.S. provided the buyers' funds due at or before closing on each of the properties.

    f.    RUGGIERO, M.D.S., and others acting in concert with them caused the mortgage lenders, and banks acting on their behalf, to wire loan proceeds into the accounts of the closing attorneys, which proceeds were then distributed to RUGGIERO, M.D.S., and others acting in concert with them. Such wires included, but are not limited to, the following:

        i.    On or about July 1, 2008, Bank of New York Mellon, on behalf of Countrywide Bank, wired mortgage loan proceeds from New York to the account of the closing attorney in Massachusetts in connection with the purchases of 64 Wayland Street, Units 1 and 2.

        ii.    On or about July 8, 2008, National City Bank wired mortgage loan proceeds from Illinois to the account of the closing attorney in

   Massachusetts in connection with the purchase of 19 Rill Street, Unit 1.

  iii. On or about November 20, 2008, U.S. Bank N.A., on behalf of Provident Funding, wired mortgage loan proceeds from Minnesota to the account of the closing attorney in Massachusetts in connection with the purchase of 11 St. Marks Street, Unit 2.

  iv. On or about December 18, 2008, National City Bank, on behalf of Greenpark Mortgage, wired mortgage loan proceeds from Missouri to the account of the closing attorney in Massachusetts in connection with the purchase of 11 St. Marks Street, Unit 3.

15. The buyers did not have the means of paying their mortgages. Thus, the mortgage loans went into default, if not foreclosure.

## OVERT ACTS

16. In furtherance of the conspiracy, and to effect the object thereof, RUGGIERO, together with M.D.S. and other conspirators known and unknown to the United States Attorney, in the District of Massachusetts and elsewhere, committed the following overt acts, among others:

### 64 WAYLAND STREET
### Dorchester, Massachusetts

17. On or about May 7, 2008, RUGGIERO purchased a multiple-family building located at 64 Wayland Street, Dorchester, Massachusetts, in the name of Alexandria One Realty. RUGGIERO subsequently arranged to have the building converted into two condominium units.

18. RUGGIERO recruited and arranged for the following buyers to purchase units in the building located at 64 Wayland Street: L.L. for Unit 1; and J.W. for Unit 2.

### *Unit 1*

19. On or about July 1, 2008, RUGGIERO and others known and unknown to the U.S. Attorney caused to be submitted to Countrywide Bank a mortgage loan application, which listed L.L. as the buyer of at 64 Wayland Street, Unit 1. The loan application contained material false representations, including statements concerning: L.L.'s intent to occupy the property as a primary residence; L.L.'s income; L.L.'s assets; L.L.'s liabilities; and that L.L. made a down payment.

20. On or about July 1, 2008, RUGGIERO and others known and unknown to the U.S. Attorney caused a HUD-1 settlement statement to be submitted to Countrywide Bank. The HUD-1 settlement statement contained material false representations, including that L.L. had paid a down payment of $28,500, and that L.L. had paid $15,866.45 at the closing.

### *Unit 2*

21. On or about July 1, 2008, RUGGIERO and others known and unknown to the U.S. Attorney caused to be submitted to Countrywide Bank a mortgage loan application, which listed J.W. as the buyer of at 64 Wayland Street, Unit 2. The loan application contained material false representations, including statements concerning: J.W.'s intent to occupy the property as a primary residence; J.W.'s income; J.W.'s assets; J.W.'s liabilities; and that J.W. made a down payment.

22. On or about July 1, 2008, RUGGIERO and others known and unknown to the U.S. Attorney caused a HUD-1 settlement statement to be submitted to Countrywide Bank. The HUD-1 settlement statement contained material false representations, including that J.W. had paid a down payment of $33,500 and that J.W. had paid $18,029.86 at closing.

# 19 RILL STREET
## Dorchester, Massachusetts

23.     On or about July 23, 2008, RUGGIERO and M.D.S. purchased a multiple-family building located at 19 Rill Street, Dorchester, Massachusetts, in the name of Hudson River Trust II.  RUGGIERO and M.D.S. subsequently arranged to have the building converted into three condominium units.

24.     RUGGIERO and M.D.S. recruited and arranged for the following buyers to purchase units in the building located at 19 Rill Street: A.W. for Unit 1; M.C. for Unit 2; and M.G. for Unit 3.

### *Unit 1*

25.     On or about July 31, 2008, RUGGIERO, M.D.S., and others known and unknown to the United States Attorney, caused to be submitted to National City Bank a mortgage loan application, which listed A.W. as the buyer of 19 Rill Street, Unit 1.  The loan application contained material false representations, including statements concerning: A.W.'s intent to occupy the property as a primary residence; A.W.'s assets; and that A.W. made a down payment.

26.     On or about July 31, 2008, RUGGIERO, M.D.S., and others known and unknown to the United States Attorney, caused a HUD-1 settlement statement to be submitted to National City Bank.  The HUD-1 settlement statement contained material false representations, including that A.W. had paid a down payment of $1,000 and that A.W. had paid $53,496.15 at closing.

### *Unit 2*

27.     On or about July 23, 2008, RUGGIERO, M.D.S., and others known and unknown to the United States Attorney, caused to be submitted to National City Bank a mortgage loan application, which listed M.C. as the buyer of 19 Rill Street, Unit 2.  The loan application contained material false representations, including statements concerning: M.C.'s intent to

occupy the property as a primary residence; M.C.'s income; M.C.'s assets; and M.C.'s employment.

28. On or about July 23, 2008, RUGGIERO, M.D.S., and others known and unknown to the United States Attorney, caused a HUD-1 settlement statement to be submitted to National City Bank. The HUD-1 settlement statement contained material false representations, including: that M.C. had paid a down payment of $500 and that M.C. had paid $55,441.63 at closing.

*Unit 3*

29. On or about July 23, 2008, RUGGIERO, M.D.S., and others known and unknown to the United States Attorney, caused to be submitted to National City Bank a mortgage loan application, which listed M.G. as the buyer of 19 Rill Street, Unit 3. The loan application contained material false representations, including statements concerning: M.G.'s intent to occupy the property as a primary residence; M.G.'s income; M.G.'s assets; and M.G.'s employment.

30. On or about July 23, 2008, RUGGIERO, M.D.S., and others known and unknown to the United States Attorney, caused a HUD-1 settlement statement to be submitted to National City Bank. The HUD-1 settlement statement contained material false representations, including that M.G. had paid a down payment of $1,000 and that M.G. had paid $42,117.68 at closing.

### 11 ST. MARKS STREET
### Dorchester, Massachusetts

31. On or about September 8, 2008, RUGGIERO and M.D.S. purchased a multiple-family building located at 11 St. Marks Street, Dorchester, Massachusetts, in the name of George Washington Trust II.

32. RUGGIERO and M.D.S. subsequently arranged to have the building converted into three condominium units.

33. RUGGIERO and M.D.S. recruited and arranged for the following buyers to purchase units in the building located at 11 St. Marks Street: M.C. for Unit 1; C.Y. for Unit 2; and H.S. for Unit 3.

### *Unit 1*

34. On or about October 8, 2008, RUGGIERO, M.D.S., and others known and unknown to the United States Attorney, caused to be submitted to National City Bank a mortgage loan application, which listed M.C. as the buyer of 11 St. Marks Street, Unit 1. The loan application contained material false representations, including statements concerning M.C.'s assets

35. On or about October 8, 2008, RUGGIERO, M.D.S., and others known and unknown to the United States Attorney, caused a HUD-1 settlement statement to be submitted to Countrywide Bank. The HUD-1 settlement statement contained material false representations, including that M.C. had paid a down payment of $24,200 and that M.C. had paid $30,471.33 at closing.

### *Unit 2*

36. On or about November 20, 2008, RUGGIERO, M.D.S., and others known and unknown to the United States Attorney, caused to be submitted to Provident Funding, a mortgage loan application, which listed C.Y. as the buyer 11 St. Marks Street, Unit 2. The loan application contained material false representations, including statements concerning: C.Y.'s intent to occupy the property as a primary residence; C.Y.'s income; C.Y.'s assets; and that C.Y. made a down payment.

37. On or about November 20, 2008, RUGGIERO, M.D.S., and others known and unknown to the United States Attorney, caused a HUD-1 settlement statement to be submitted to Provident Funding. The HUD-1 settlement statement contained material false representations, including that C.Y. had paid a down payment of $35,000 and that C.Y. had paid $16,034.96 at closing.

*Unit 3*

38. On or about December 18, 2008, M.D.S. and others known and unknown to the United States Attorney, caused to be submitted to Greenpark Mortgage a mortgage loan application, which listed H.S. as the buyer of 11 St. Marks Street, Unit 3. The loan application contained material false representations, including statements concerning: that H.S. intended to occupy the property as a secondary residence; and H.S.'s assets.

39. On or about December 18, 2008, M.D.S. and others known and unknown to the United States Attorney, caused a HUD-1 settlement statement to be submitted to Greenpark Mortgage. The HUD-1 settlement statement contained material false representations, including: that H.S. had paid a down payment of $500 and that H.S. had paid $50,315.99 at closing.

All in violation of Title 18, United States Code, Section 371.

# FORFEITURE ALLEGATIONS
## (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

40. Upon conviction of the offense alleged in Count One of this Information, the defendant,

**JOAN RUGGIERO**

Shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any real property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offenses.

41. If any of the property described in paragraph 40 hereof as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant –

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred to, sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of this Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in paragraph 40.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: /s/ Eric P. Christofferson
ERIC P. CHRISTOFFERSON
Assistant U.S. Attorney

Dated: 8/29/2013